No.  **91-194**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

IN RE THE MARRIAGE OF SANDY JO CONVERSE,

   Petitioner and Appellant,

 and

EDWIN FRANK CONVERSE, aka EDWIN FRANK WELLS,

   Respondent and Respondent.

FILED

FEB 21 1992

*Smith*
OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twelfth Judicial District,
      In and for the County of Hill,
      The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     Susan Gecho Gobbs, Attorney at Law, Havre, Montana.

   For Respondent:

     Cregg W. Coughlin, Altman & Boucher, Havre, Montana.

          Submitted on Briefs: September 5, **1991**

               Decided: February 21, 1992

Filed:

_____
      Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal by the wife from a decree of dissolution entered in the Twelfth Judicial District Court, Hill County, Montana. Both parties stipulated to all of the contested issues associated with the dissolution and the decree was then entered. The wife then made a motion to alter or amend the judgment in regard to the custody provisions on the grounds that said provisions did not accurately reflect the stipulation of the parties. The District Court denied this motion and the wife appeals. We reverse.

We phrase the issue before this Court as follows:

Did the District Court err in determining custody without first considering the mandatory statutory guidelines for making custody determinations found at § 40-4-212, MCA?

Appellant Sandy Converse and respondent Edwin Converse were married in July 1977. The parties separated in October 1989, and the wife filed a petition for dissolution in April 1990. The parties are the parents of four minor children. A temporary custody order was issued with the wife as the custodial parent. A restraining order was also issued ordering the husband to not have any contact with either the wife or the four minor children.

A trial date was set for August 1990. The wife's petition for dissolution included a prayer for joint custody of the four children. Prior to trial, the parties stipulated that the wife could amend the petition to request sole custody. The August 1990

2

trial date was continued until October 29, 1990. Prior to trial, the parties had mutually agreed on many of the issues relating to the dissolution. On the morning of the trial, the parties met with the District Court Judge in chambers, at the request of the Judge, to determine if the remaining contested issues could be settled to the satisfaction of the parties without a trial. While in chambers and off the record, the attorneys apparently reached a settlement agreement. After taking the agreement to their clients, the stipulated terms of the decree were reiterated for the record.

The District Court instructed the wife's counsel to draft a decree of dissolution reflecting the stipulations of the parties. On November 27, 1990, the proposed decree was submitted to the court. Counsel for the husband objected to the terms relating to custody of the children, alleging these terms did not accurately reflect the agreement that had been reached by the parties. The court agreed with counsel for the husband that the proposed decree did not reflect the agreement of the parties and instructed counsel for the wife to draft another proposed decree with custody provisions in line with the stipulation.

Eventually the court drafted the decree which was entered on January 4, 1991, along with the court's findings of fact and conclusions of law. The custody provision of the decree reflected the understanding of both the husband's counsel and the court as to the terms of the stipulation. The wife filed a motion pursuant to Rule 59, M.R.Civ.P., to delete the portion of the decree concerning

3

custody to which the wife alleges she did not agree.  It is from the District Court's denial of this motion that the wife appeals.

Did the District Court err in determining custody without first considering the mandatory statutory guidelines for making custody determinations found at § 40-4-212, MCA?

Written agreements in which parties to a dissolution stipulate to the terms of the dissolution are encouraged in this state, both for purposes of judicial economy and to promote the "amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage . . . ." Section 40-4-201, MCA.  In the present case, it was an in-court oral stipulation by the parties and not a formal written separation agreement, but the distinction is unimportant.  In re Marriage of Mager (1990), 241 Mont. 78, 785 P.2d 198.  However, while encouraged, these agreements are not binding upon the district court judge as to support, custody, or visitation.  Section 40-4-201, MCA.  Even if both husband and wife stipulate to custody, the judge is not bound by that stipulation, but may instead order a different custody arrangement in accord with the best interests of the children.  Mager, 785 P.2d at 200.  Section 40-4-212, MCA, mandates that custody determinations must be based on the best interests of the children.  The rationale underlying this policy was set out by this Court in In re Marriage of Neiss (1987), 228 Mont. 479, 743 P.2d 1022.  In Neiss, we stated that "[i]t is the children, not the parents, who are beneficiaries of child support

4

decrees," and "the custody and support of children are never left to contract between the parties."  Neiss, 743 P.2d at 1024.

Section 40-4-212, MCA, requires custody determinations be made in accordance with the best interests of the children as determined by the district court after considering the following criteria:

> (a)  [T]he wishes of the child's parent or parents as to his custody:
>
> (b)  the wishes of the child as to his custodian;
>
> (c)  the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest:
>
> (d)  the child's adjustment to his home, school, and community;
>
> (e)  the mental and physical health of all individuals involved:
>
> (f)  physical abuse or threat of physical abuse by one parent against the other parent or the child; and
>
> (g)  chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

This list is not all inclusive.  This Court has suggested that the parents' ability to cooperate in their parental roles and the geographical proximity of the parents' residences are at least two additional factors which should be considered.  In re Custody and Support of B.T.S. (1986), 219 Mont. 391, 395-96, 712 P.2d 1298, 1301.  Section 40-4-223, MCA, also provides that in awarding joint custody consideration must be given to which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent.

5

When reviewing custody issues this Court must first determine if the factors set out in § 40-4-212, MCA, were considered by the district court. In re Marriage of Jacobson (1987), 228 Mont. 458, 743 P.2d 1025. While it is encouraged, the trial court need not make specific findings on each of the factors. However, failure by the trial court to at least consider all of the statutorily mandated factors is error. In re Marriage of Speer (1982), 201 Mont. 418, 654 P.2d 1001. The custody determination must be based on substantial evidence relating to the statutory factors and must be set forth explicitly in the findings. In re Marriage of J.J.C. and P.R.C. (1987), 227 Mont. 264, 739 P.2d 465. The findings should, at a minimum, set forth the "essential and determining facts upon which the District Court rested its conclusion on the custody issue." In re Marriage of Cameron (1982), 197 Mont. 226, 231, 641 P.2d 1057, 1060 (quoting In re Marriage of Barron (1978), 171 Mont. 161, 580 P.2d 936). This Court has refused to uphold an award of custody when the district court's findings indicated that not all of the statutory factors had been considered, even though the extensive record in the case indicated that the district court had received substantial evidence on each of the factors. In re Marriage of Keating (1984), 212 Mont. 462, 689 P.2d 249.

In the present case, there is nothing in the record before this Court demonstrating that the statutory criteria for making custody determinations were considered by the trial court. If some or all of the factors were considered during the off the record

6

conference between the trial judge and counsel for the parties, this is not reflected in the record. Even if the relevant factors had been considered, there was nothing in the trial court's findings indicating the basis for the custody decision in relation to the factors. The findings of the District Court simply indicated that the custody decision was in the "best interest of the children" without elaborating further.

It is clear that the District Court Judge attempted to bring the parties together in order to encourage an amicable settlement to their disputes without having to resort to a trial. While the District Court's effort to bring the parties together is laudable, we hold that the District Court erred in not giving consideration to the statutory criteria found at § 40-4-212, MCA, and in failing to explicitly state the basis for the custody decision in the findings.

We remand this case to the District Court to receive evidence relative to the statutory factors necessary for a determination of custody and for explicit findings setting forth at least the "essential and determining facts" upon which the District Court rests its conclusion on custody.

Reversed and remanded.

_____
Justice

7

We concur:

_John Conway Harrison_

_Karla M. Gray_

_P.C. McDonough_

_Jim R[...]_
Justices

February 21, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Susan Gecho Gobbs
MONTANA LEGAL SERVICES
208 Masonic Temple
P.O. Box 548
Havre, MT 59501

Cregg W. Coughlin
ALTMAN & BOUCHER
P.O. Box 268
Havre. Montana 59501

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy