JUSTICE HARRISON
dissenting.
I dissent. I would hold that the determination of primary physical custody of the minor child was properly before the District Court, and I would affirm the District Court’s award of joint custody and the court’s designation of the respondent father as the primary residential custodian of the minor child.
The record is clear. The minor, C.J.K., was born on July 24, 1990, to the mother and father after a one-year relationship in which the mother and father resided together but never married. C.J.K. is the youngest of six children born to the mother; four other children were born to the mother from a previous marriage, and she had one other child from a previous relationship. C.J.K. is the father’s only child.
Nearly eight months after the birth of C.J.K. and after the parties’ relationship failed, the mother filed with the District Court a “Petition for Custody and Support” wherein she asked the court to award joint custody of C.J.K. to the parties with herself as the primary custodial parent, and to require the father to pay child support according to the Uniform Guidelines. In his response and counter-petition, the father prayed that joint custody be awarded the parties *529 with the mother as primary custodian until C.J.K. reached the age of five, when the father would be granted primary physical custody. The father’s counter-petition also provided for liberal visitation for the noncustodial parent. It also provided that the father would pay child support during each month that C.J.K. was in the mother’s care; that the income tax exemption could be claimed by the primary physical custodian; that the father would provide C.J.K’s medical insurance; that any uncovered medical expenses would be shared equally by the parties; and that each party would be responsible for his or her individual attorney’s fees and costs incurred in this matter.
At the hearing in February, 1992, the father requested for the first time that he, not the mother, be designated as the primary custodial parent. The mother filed a legal memorandum setting forth her objections to this unanticipated oral request. The District Court properly took the position that in Montana it is clear that the court’s duty is to look to the “best interest of the child” regardless of the custodial arrangements sought by the parties.
Custody of C.J.K. and the parties’ concerns for his best interest were thoroughly discussed at the February, 1992, hearing. Again, the record is clear. It indicates, at length, a severe problem in the mother’s home as to the care of her six children, including her failure to supervise the children; and that C.J.K. was left in the custody of her oldest daughter, who was fifteen at the time of the District Court hearing. Often during the week the mother did not return home until 2:00 or 3:00 a.m., leaving the fifteen-year-old to care for the younger children. The court’s findings of fact indicate that the Family Services Department had investigated five complaints relating to the filthy and unhealthy condition of the mother’s home. The record also indicates that the mother refused to cooperate with the father in several areas concerning C.J.K.
I find that the first issue, whether primary physical custody of C.J.K. was properly before the District Court, is the key to the resolution of this matter. The mother alleges that the issue of primary physical custody was not before the court, as the father had requested split custody in his response and counter-petition. I disagree. This issue was placed before the court by the mother herself in her “Petition for Custody and Support,” in which she prayed that C.J.K. be placed in the joint care, custody and control of the mother and father, with the mother as “custodial parent.” This request in itself raises the question of primary physical custody.
*530 In response to the mother’s petition, the father denied that making the mother the custodial parent was in C.J.K.’s best interest and requested a split custody arrangement until C.J.K. reached the age of five, at which time the father requested that he be granted primary physical custody. Primary physical custody of C.J.K. was the central issue of the entire testimony before the District Court. Both parties presented evidence on the issue and the District Court properly applied the best interest test in designating the father the primary residential custodian of C.J.K.
This Court has held that under § 40-4-212, MCA, the best interest of the child factor is controlling regardless of any requests by either party, and that the court’s failure to consider its elements could result in reversible error, even if the parties themselves have entered into an agreement regarding the issue of custody. In re Marriage of Mager (1990), 241 Mont. 78, 785 P.2d 198; In re Marriage of Converse (1992), 252 Mont. 67, 826 P.2d 937.
Here, the record indicates that the District Court considered all of the statutory criteria for determining the child’s best interest, and that its findings and conclusions are supported by substantial credible evidence.
I would hold that the determination of primary physical custody was properly before the District Court and that the court did not err in making its determination under § 40-4-212, MCA. I would affirm.